ORAL ARGUMENT NOT YET SCHEDULED

**Nos. 21-1263 (Lead) & 22-1013 (Consolidated)**

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

Board of County Commissioners of Weld County, Colorado,
*Petitioner*

*v.*

Environmental Protection Agency, et al.,
*Respondents*

Board of County Commissioners of Boulder County, et al.,
*Intervenors*

On Petitions for Review of a Final Action
of the United States Environmental Protection Agency

## PROOF BRIEF FOR PETITIONERS STATE OF TEXAS AND TEXAS COMMISSION ON ENVIRONMENTAL QUALITY

Ken Paxton
Attorney General of Texas

Brent Webster
First Assistant Attorney General

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1700
Fax: (512) 474-2697

Judd E. Stone II
Solicitor General

Bill Davis
Deputy Solicitor General

Michael R. Abrams
Assistant Solicitor General
Michael.Abrams@oag.texas.gov

Counsel for the State of Texas and the
Texas Commission on Environmental
Quality

## Certificate as to Parties, Rulings, and Related Cases*

**(A) Parties**

Petitioners in these consolidated cases are the State of Texas and the Texas Commission on Environmental Quality (collectively, "Texas"), in Case No. 22-1013; and the Board of County Commissioners of Weld County, Colorado ("Weld County"), in Case No. 21-1263. Respondents are the United States Environmental Protection Agency ("EPA") and EPA Administrator Michael S. Regan. Intervenors are the Center for Biological Diversity, National Parks Conservation Association, Sierra Club, Chaparral Community Coalition for Health and Environment, Earthworks, Familias Unidas del Chamizal, and the Board of County Commissioners of Boulder County.

**(B) Ruling Under Review**

Additional Revised Air Quality Designations for the 2015 Ozone National Ambient Air Quality Standards: El Paso County, Texas and Weld County, Colorado, 86 Fed. Reg. 67,864 (Nov. 30, 2021).

**(C) Related Case**

*Clean Wisconsin v. EPA*, No. 18-1203, 964 F.3d 1145 (D.C. Cir. 2020) (per curiam), was previously before this Court and involved similar issues.

/s/ Michael R. Abrams
Michael R. Abrams

---

* As a governmental party, Texas is not subject to the requirements of Federal Rule of Appellate Procedure 26.1.

# Statement Regarding Oral Argument

Texas respectfully requests oral argument. When EPA determines that an area in a State has failed to attain an air-quality standard, the Clean Air Act ensures that the State has at least three years from that determination to plan for and reach attainment status. In the final action challenged here, EPA overrode that statutory timeline. It set an attainment deadline that expired months *before* it designated El Paso County, Texas, as a nonattainment area, giving Texas no opportunity to plan for attainment.

That action implicates foundational prohibitions against retroactive rulemaking found in the Administrative Procedure Act, the Clean Air Act, and this Court's precedent. In light of the importance of the issues and the complex history leading to EPA's final action, oral argument is likely to assist the Court.

# TABLE OF CONTENTS

Page

Certificate as to Parties, Rulings, and Related Cases....................................i

Statement Regarding Oral Argument........................................................ii

Table of Authorities ......................................................................... iv

Glossary ..................................................................................... viiv

Statutes and Regulations ................................................................... ivii

Introduction .................................................................................. 1

Statement of Jurisdiction .................................................................... 1

Issues Presented.............................................................................. 2

Statement of the Case ....................................................................... 3

    I.    EPA's Rulemaking Authority ......................................................... 3

    II.   Federal and State Authority Under the Clean Air Act .............................. 3

        A.  Area designations, including modifications of governors' initial designations ........................................................... 4

        B.  State and federal implementation plans ....................................... 5

        C.  Area classifications and attainment dates..................................... 5

        D.  Redesignations and reclassifications ......................................... 6

        E.  Significance of area designations, modifications, classifications, redesignations, and reclassifications............................... 7

    III.  The 2015 NAAQS for Ozone and Area Designations for Those NAAQS ........................................................................... 8

    IV.  *Clean Wisconsin*................................................................. 9

    V.  EPA's Actions on Remand, Texas's Comments, and This Litigation ....................................................................... 10

Summary of the Argument..................................................................13

Standard of Review ....................................................................... 14

Standing .................................................................................... 14

Argument ...................................................................................15

    I.    The Retroactive Component of the Final Rule Exceeds EPA's Statutory Authority and Is Arbitrary and Capricious.................................15

        A.  The Final Rule exceeds EPA's statutory authority.............................16

       1.   The Final Rule is inconsistent with the APA. ..............................16

       2.   The Final Rule is inconsistent with the CAA. ............................17

   B.   The Final Rule is arbitrary and capricious. ..........................................19

       1.   EPA's justifications for its chosen approach are insufficient.........19

       2.   EPA could have regulated reasonably. ......................................... 23

II.   EPA Exceeded Its Statutory Authority and Acted Arbitrarily and Capriciously in Disguising a Redesignation as a Modification. ................. 23

Conclusion .......................................................................................................... 26

Certificate of Compliance .................................................................................. 27

Certificate of Service .......................................................................................... 27

# Table of Authorities

                                                                       Page(s)

**Cases:**

*Arkema Inc. v. EPA*,
   618 F.3d 1 (D.C. Cir. 2010) ...........................................................................15

*Bowen v. Georgetown Univ. Hosp.*,
   488 U.S. 204 (1988) ......................................................................................16

*Celtronix Telemetry, Inc. v. FCC*,
   272 F.3d 585 (D.C. Cir. 2001) .......................................................................16

*CHM Broad. Ltd. P'ship v. FCC*,
   24 F.3d 1453 (D.C. Cir. 1994) ...................................................................... 21

*Clean Wis. v. EPA*,
   964 F.3d 1145 (D.C. Cir. 2020) ................................................. 10, 12, 20, 23, 24

*Encino Motorcars, LLC v. Navarro*,
   579 U.S. 211 (2016) ...................................................................................... 22

*Landgraf v. USI Film Prods.*,
   511 U.S. 244 (1994) .................................................................................. 15, 17

*Massachusetts v. EPA*,
   549 U.S. 497 (2007) ...................................................................................... 14

*Michigan v. EPA*,
   268 F.3d 1075 (D.C. Cir. 2001) ..................................................................... 3

*Nat'l Petrochemical & Refiners Ass'n v. EPA*,
    630 F.3d 145 (D.C. Cir. 2010) ........................................................ 15, 16
*North Carolina v. EPA*,
    550 F.3d 1176 (D.C. Cir. 2008) ............................................................. 25
*In re Ozone Designation Litig.*,
    286 F. Supp. 3d 1082 (N.D. Cal. 2018) .................................................. 9
*Sierra Club v. Whitman*,
    285 F.3d 63 (D.C. Cir. 2002) ................................................................ 18
*Treasure State Res. Indus. Ass'n v. EPA*,
    805 F.3d 300 (D.C. Cir. 2015) .............................................................. 18
*WildEarth Guardians v. EPA*,
    830 F.3d 529 (D.C. Cir. 2016) ........................................................ 17, 18

**Statutes, Regulations, and Federal Register Materials:**

5 U.S.C.:
    § 551(4) ............................................................ 3, 15, 16, 17
    § 706(2)(A) ....................................................................... 14
    § 706(2)(C) ....................................................................... 14

42 U.S.C.:
    § 7407(a) ..................................................................... 5, 15
    § 7407(d) ............................................................................ 3
    § 7407(d)(1)(A) ...................................................... 4, 5, 9, 19
    § 7407(d)(1)(A)(i) .................................................... 4, 11, 19
    § 7407(d)(1)(A)(ii) ............................................................... 4
    § 7407(d)(1)(A)(iii) .............................................................. 4
    § 7407(d)(1)(B) .................................................................. 20
    § 7407(d)(1)(B)(i) ............................................................ 4, 24
    § 7407(d)(1)(B)(ii) ....................................................... 5, 23, 24
    § 7407(d)(1)(B)(ii)-(iii) ...................................................... 20
    § 7407(d)(3) .................................................................. 4, 23
    § 7407(d)(3)(A)-(C) ......................................................... 6, 24
    § 7407(d)(3)(C) ................................................................. 23
    § 7408 ............................................................................... 3
    § 7409(a) ............................................................................ 3
    § 7409(b)(1) ........................................................................ 3
    § 7409(b)(2) ........................................................................ 3
    § 7410(a) ........................................................................... 19

§ 7410(a)(2) ................................................................ 7

§ 7410(c)(1) ................................................................ 5

§ 7471 ........................................................................ 7

§ 7502(a)(2)(A) ......................................................... 6

§ 7502(b) ................................................................. 19

§ 7502(c) ................................................................... 4

§ 7502(c)(1) .............................................................. 7

§ 7502(c)(3) .............................................................. 7

§ 7502(c)(5) .............................................................. 7

§ 7511(a) ............................................... 6, 18, 24, 25

§ 7511(a)(1) ............................... 3, 4, 5, 6, 9, 23

§ 7511(b)(1) ....................................... 6, 18, 24

§ 7511(b)(2) .............................................................. 4

§ 7511(b)(2)(A) .................................................. 6, 22

§ 7511(b)(2)(A)(i) ................................................... 6

§ 7511(b)(2)(A)(i)-(ii) ...................................... 7, 22

§ 7511(b)(2)(A)(ii) ................................................. 6

§ 7511a(b) ........................................................... 7, 22

§ 7511a(b)(1) ........................................................... 8

§ 7511a(b)-(e) ......................................................... 7

§ 7511a(i) ................................................................ 19

§ 7511a(j) ............................................................... 20

§ 7607(b)(1) ............................................................. 1

§ 7607(d)(9)(A) ..................................................... 14

§ 7607(d)(9)(C) ................................................ 3, 14

40 C.F.R.:

pt. 50, App'x U ...................................................... 5

§ 51.1303(a) ............................................................ 9

56 Fed. Reg. 56,694 (Nov. 6, 1991) ..................... 21

60 Fed. Reg. 30,789 (June 12, 1995) .................... 21

79 Fed. Reg. 75,234 (Dec. 17, 2014) ...................... 8

80 Fed. Reg. 65,292 (Oct. 26, 2015) ................. 8, 24

82 Fed. Reg. 29,246 (June 28, 2017) ...................... 8

82 Fed. Reg. 54,232 (Nov. 16, 2017) ............... 5, 8, 9

83 Fed. Reg. 10,376 (Mar. 9, 2018) ........................ 5

83 Fed. Reg. 25,776 (June 4, 2018) ......................... 9

86 Fed. Reg. 31,460 (June 14, 2021)...........................................................11
86 Fed. Reg. 67,864 (Nov. 30, 2021)..................................... 3, 11, 12, 16, 17, 24, 25

## Glossary

| | |
|---|---|
| 2017 Designations Rule | Air Quality Designations for the 2015 Ozone National Ambient Air Quality Standards, 82 Fed. Reg. 54,232 (Nov. 16, 2017) |
| APA | Administrative Procedure Act, 5 U.S.C. § 551 *et seq.* |
| AR | Administrative record (The "AR-" documents cited in this brief are from EPA docket number EPA-HQ-OAR-2017-0548. They are identified by their final four digits on EPA's docket.) |
| CAA or Act | Clean Air Act, 42 U.S.C. § 7401 *et seq.* |
| EPA | United States Environmental Protection Agency |
| Final Rule | Additional Revised Air Quality Designations for the 2015 Ozone National Ambient Air Quality Standards: El Paso County, Texas and Weld County, Colorado, 86 Fed. Reg. 67,864 (Nov. 30, 2021) |
| FIP | Federal implementation plan |
| JA | Joint appendix |
| NAAQS | National ambient air quality standard(s) |
| SIP | State implementation plan |
| TCEQ | Texas Commission on Environmental Quality |
| Texas | Petitioners the State of Texas and TCEQ |

## Statutes and Regulations

The relevant statutes and regulations appear in the petitioners' addendum.

vii

## Introduction

The challenged rule is impermissibly retroactive. In 2018, EPA's administrator determined through a final rulemaking that El Paso County was in "Attainment/Unclassifiable" status for ozone notwithstanding its alleged contribution of air pollution to a nearby nonattainment area in New Mexico. Three years later, EPA changed course. On November 30, 2021, it issued the challenged rule determining that El Paso County contributed to the nearby nonattainment area and was therefore in nonattainment status itself. Concurrently with that designation, and over Texas's objection, EPA set a retroactive deadline of August 3, 2021, for El Paso County to gain attainment status.

This Court does not lightly presume that federal agencies can regulate retroactively, and it has repeatedly held that the CAA does not alter that broadly applicable principle. In the proceedings below, EPA characterized its action as a mere "modification" of the administrator's prior designation of El Paso County. In fact, it was a redesignation, not a modification. But either way, EPA deprived Texas of the three years that States are statutorily afforded to gain attainment status. The challenged rule exceeds EPA's statutory authority and is arbitrary and capricious. It should therefore be set aside.

## Statement of Jurisdiction

The Final Rule was published in the Federal Register on November 30, 2021. Texas's petition for review was timely filed on January 28, 2022, invoking this Court's jurisdiction under 42 U.S.C. § 7607(b)(1).

## Issues Presented

Effective August 3, 2018, EPA's administrator designated El Paso County, Texas, as "Attainment/Unclassifiable" for ozone. In litigation challenging that designation, this Court granted EPA's request to remand the designation without vacatur. On remand, EPA issued a final rule that made El Paso County part of a preexisting nonattainment area across the border in New Mexico. Even though El Paso County had never previously been found to be in nonattainment of the relevant ozone standards, the Final Rule set a retroactive attainment deadline for the entire expanded nonattainment area. That deadline passed nearly four months before the rule was published in the Federal Register and five months before it took effect.

The issues presented are:

1. Whether EPA's requirement that El Paso County reach attainment status by a date in the past: (a) violates the APA's prohibition on retroactive rulemaking and the CAA's mandate that States receive a minimum of three years to reach attainment status upon a nonattainment designation; or (b) is arbitrary and capricious.

2. Whether the Final Rule's so-called "modification" of the administrator's initial El Paso County "Attainment/Unclassifiable" designation was in fact an impermissible redesignation, providing an independent basis to set aside the Final Rule as both beyond the agency's statutory authority and arbitrary and capricious.

## Statement of the Case

The Final Rule affects Texas and Weld County differently. This statement relates to the Texas portions of the rule.

## I.  EPA's Rulemaking Authority

Federal agencies, including EPA, may promulgate rules "of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy." 5 U.S.C. § 551(4). The agency action at issue here is a rule, Final Rule, 86 Fed. Reg. at 67,864 (JA ____), and is therefore subject to the APA's "future effect" limitation. 5 U.S.C. § 551(4); *see* 42 U.S.C. § 7607(d)(9)(C) (EPA cannot issue a rule "in excess of statutory jurisdiction, authority, or limitations").

## II.  Federal and State Authority Under the Clean Air Act

The Clean Air Act is "an experiment in cooperative federalism." *Michigan v. EPA*, 268 F.3d 1075, 1083 (D.C. Cir. 2001). Although it is "intended to create an overarching federal role in air pollution control policy," the federal role is to set standards, not to implement them. *Id.* States bear the "primary responsibility for ensuring that ambient air meets federally-established standards." *Id.* at 1082.

The Act directs EPA to establish primary and secondary NAAQS, including for ozone, at the level needed to protect public health and welfare. 42 U.S.C. § 7409(a); *id.* § 7408; *see id.* § 7409(b)(1), (2) (reflecting that primary standards protect public health, while secondary standards protect public welfare). After that preliminary step, state governors and EPA's administrator collaborate on designating areas for purposes of a NAAQS, *id.* § 7407(d), and nonattainment areas are assigned classifications based on air quality, *id.* § 7511(a)(1). Once the designations are final,

3

the administrator may redesignate and reclassify areas when certain conditions are met. *Id.* §§ 7407(d)(3), 7511(b)(2). Designations and classifications dictate the level of emission controls a State must implement and how quickly those controls must achieve the required air-quality results. *Id.* §§ 7502(c), 7511(a)(1).

## A. Area designations, including modifications of governors' initial designations

"[N]ot later than 1 year after promulgation of a new or revised [NAAQS] . . ., the Governor of each State shall . . . submit to the [EPA] Administrator a list of all areas (or portions thereof) in the State" designated as either nonattainment, attainment, or unclassifiable. *Id.* § 7407(d)(1)(A). A "nonattainment" area is one that "does not meet (or . . . contributes to ambient air quality in a nearby area that does not meet) the [NAAQS]." *Id.* § 7407(d)(1)(A)(i). An "attainment" area is "any area (other than [a nonattainment area]) that meets the [NAAQS]." *Id.* § 7407(d)(1)(A)(ii). An "unclassifiable" area is "any area that cannot be classified on the basis of available information as meeting or not meeting the [NAAQS]." *Id.* § 7407(d)(1)(A)(iii).

The administrator must promulgate the governors' designations "as expeditiously as practicable, but in no case later than 2 years from" the date a NAAQS is established or revised. *Id.* § 7407(d)(1)(B)(i). But if the administrator "has insufficient information to promulgate the designations," he or she may extend the deadline "for up to one year." *Id.*

Although the administrator has the power to modify a governor's designations, that power is limited. The administrator may make only "such modifications as the

Administrator deems necessary to the designations of the areas (or portions thereof) submitted under [section 7407(d)(1)(A)] (including to the boundaries of such areas or portions thereof)." *Id.* § 7407(d)(1)(B)(ii). The administrator must notify the State of any intended change to a designation and provide the State with at least 120 days "to demonstrate why any proposed modification is inappropriate." *Id.* "These notifications are commonly known as . . . 120-day letters." AR-0001, 2017 Designations Rule, 82 Fed. Reg. at 54,233 (JA ____).

## B.  State and federal implementation plans

Once the administrator finalizes area designations for a NAAQS by either promulgating a governor's designations or making modifications to those designations, States must submit SIPs specifying how the NAAQS "will be achieved and maintained." 42 U.S.C. § 7407(a). As a backstop, the administrator must promulgate FIPs for States with insufficient or nonexistent SIPs. *Id.* § 7410(c)(1).

## C.  Area classifications and attainment dates

When an area is designated as nonattainment, the administrator must classify the area based on its degree of nonattainment. The CAA provides that "[e]ach area designated nonattainment for ozone" shall be classified as marginal, moderate, serious, severe, or extreme based on its "design value." *Id.* § 7511(a)(1); *see* 40 C.F.R. pt. 50, App'x U (reflecting how EPA calculates ozone design values); Implementation of the 2015 National Ambient Air Quality Standards for Ozone: Nonattainment Area Classifications Approach, 83 Fed. Reg. 10,376 (Mar. 9, 2018) (establishing the

air-quality thresholds that define the classifications assigned to all nonattainment areas for the 2015 ozone NAAQS).

Once those classifications are finalized, States must meet deadlines, or "attainment dates," by which nonattainment areas must reach attainment status. 42 U.S.C. § 7502(a)(2)(A). An area classified as a marginal ozone nonattainment area—the least severe nonattainment level—has three years from the date of initial designation as nonattainment to reach attainment status, *id.* § 7511(a)(1), an area designated moderate—the next level—has six years to reach attainment status, *id.*, and so on, *id.* At the conclusion of the applicable period, EPA recalculates the area's design value to determine "whether the area attained the standard by [the attainment] date." *Id.* § 7511(b)(2)(A).

### D. Redesignations and reclassifications

After the administrator has finalized area designations for a NAAQS, he or she may revisit those designations and, upon 120 days' notice to a State's governor, "redesignate" any area in the State. *Id.* § 7407(d)(3)(A)-(C). When the administrator redesignates an ozone area as nonattainment, that area "shall, at the time of the redesignation, be classified by operation of law" in accordance with the deadlines set out in section 7511(a). *See id.* § 7511(b)(1).

The administrator may also reclassify an ozone nonattainment area. If such an area fails to attain the NAAQS by its deadline, *see id.* § 7511(a)(1), EPA must reclassify the area to "the higher of . . . the next higher classification" or "the classification applicable to the area's design value." *Id.* § 7511(b)(2)(A)(i), (ii).

### E. Significance of area designations, modifications, classifications, redesignations, and reclassifications

States' obligations under the Act depend on all of the matters just discussed. For attainment or unclassifiable areas, States need only meet the Act's general SIP requirements and implement standard emission-control measures, such as preventing significant deterioration of air quality. *See id*. §§ 7410(a)(2), 7471. For nonattainment areas, the Act imposes more onerous requirements, including that States establish more stringent permitting programs for pollution sources, *see id*. § 7502(c)(5), submit "comprehensive, accurate, current inventor[ies] of actual emissions from all sources," *id*. § 7502(c)(3), and demonstrate that they intend to implement "all reasonably available control measures" and "reasonably available control technology," *id*. § 7502(c)(1).

The Act requires additional, and more burdensome, planning steps at each nonattainment classification level, and classification levels change upon nonattainment findings. *See id*. § 7511a(b)-(e). So, for instance, if EPA determines that a State with a marginal ozone nonattainment area failed to bring that area into attainment status by the initial attainment date, the area will be "reclassified by operation of law" to the higher of a "moderate" nonattainment level (the next higher classification after marginal) or the "classification applicable to the area's design value." *Id*. § 7511(b)(2)(A)(i)-(ii).

That is significant, given the increased burdens that accompany a moderate nonattainment classification. Under section 7511a(b), States with moderate nonattainment areas must satisfy all of the requirements for marginal areas plus several others,

such as planning for significant annual reductions in emissions of volatile organic compounds and nitrogen oxides. *Id.* § 7511a(b)(1); *see* AR-0590 at 31 (JA \_\_\_\_) (EPA's acknowledgment that moderate nonattainment areas are subject to more burdensome planning requirements than are marginal nonattainment areas).

## III. The 2015 NAAQS for Ozone and Area Designations for Those NAAQS

In 2014, EPA published a proposal to revise the primary and secondary 8-hour ozone NAAQS. National Ambient Air Quality Standards for Ozone, 79 Fed. Reg. 75,234 (proposed Dec. 17, 2014) (JA \_\_\_\_); *see id.* at 75,236 (JA \_\_\_\_) (reflecting that "8-hour" means the applicable averaging time for design-value purposes). EPA finalized that action in 2015, reducing the maximum allowable design value from 0.075 parts per million to 0.070 parts per million. National Ambient Air Quality Standards for Ozone, 80 Fed. Reg. 65,292, 65,292-93 (Oct. 26, 2015).

EPA's final action triggered the governors' responsibility to submit initial area designations. *See* 2017 Designations Rule, 82 Fed. Reg. at 54,233 (JA \_\_\_\_). Rather than immediately review those designations, however, the administrator extended the designation process by one year. Extension of Deadline for Promulgating Designations for the 2015 Ozone National Ambient Air Quality Standards, 82 Fed. Reg. 29,246, 29,247 (June 28, 2017); *see* AR-0214, Letter from Texas Governor Greg Abbott to EPA Administrator Scott Pruitt at 1 (Sept. 27, 2017) (JA \_\_\_\_) (urging EPA to accept Governor Abbott's ultimate "attainment" designation for El Paso County); *see also* AR-0046, AR-0216 (JA \_\_\_\_-\_\_\_\_, \_\_\_\_-\_\_\_\_) (earlier letters from

Governor Abbott and TCEQ's executive director reflecting the history of the El Paso County designation).

After various parties sued, EPA withdrew the extension but published designations for only those areas that governors designated as attainment or unclassifiable. *See* 2017 Designations Rule, 82 Fed. Reg. at 54,232 (JA ___). Another lawsuit followed, and this time a district court ordered EPA to promulgate designations for all areas of the country, except for eight counties in the San Antonio area, by April 30, 2018. *In re Ozone Designation Litig.*, 286 F. Supp. 3d 1082, 1091 (N.D. Cal. 2018).

Effective August 3, 2018, the administrator finalized all of the remaining designations except those in and around San Antonio. AR-0375, Additional Air Quality Designations for the 2015 Ozone National Ambient Air Quality Standards, 83 Fed. Reg. 25,776, 25,776 (June 4, 2018) (JA ___, ___). In that action, the administrator designated El Paso County as "Attainment/Unclassifiable" (a hybrid designation not listed in section 7407(d)(1)(a)) and designated part of Doña Ana County, New Mexico, which neighbors El Paso County to the west, as a nonattainment area with a "marginal" classification. *Id.* at 25,820, 25,832 (JA ___, ___). EPA's final implementing regulations, which tracked the language of the Act, provided that the nonattainment areas had to attain the 2015 NAAQS no later than August 3, 2021—three years after the August 3, 2018, effective date of the designation action. 40 C.F.R. § 51.1303(a); *see* 42 U.S.C. § 7511(a)(1); AR-0375 at 25,776 (JA ___).

## IV. *Clean Wisconsin*

Several interest groups, three local government agencies, and the State of Illinois filed petitions for review challenging the administrator's 2015 NAAQS designations.

*Clean Wis. v. EPA*, 964 F.3d 1145, 1152 (D.C. Cir. 2020) (per curiam). Collectively, the petitioners challenged aspects of the designations for 17 counties associated with nine nonattainment areas. *Id.* at 1156. The petitioners argued that EPA improperly designated counties, including El Paso County, as attainment that should have been designated as nonattainment because of contribution to nearby nonattainment areas. *Id.* at 1174.

EPA requested voluntary remand of the designations for ten counties, including El Paso County. *Id.* In making that request, EPA "expressly disclaim[ed] any 'error or impropriety'" in the administrator's initial designations. *Id.* at 1175.

The Court granted EPA's request for voluntary remand and also remanded, without vacatur, several other designations. *Id.* at 1177. Although the designation of El Paso County was among those the Court remanded, *id.*, no petitioner had challenged the Doña Ana County marginal nonattainment designation or requested that the boundaries of the Doña Ana County nonattainment area be altered.

## V.  EPA's Actions on Remand, Texas's Comments, and This Litigation

On remand, an EPA official notified Texas Governor Greg Abbott of the administrator's intent to "modify" the State's "designation recommendation" for the El Paso County area. *See* AR-0465, Letter from David W. Gray, Acting Regional Administrator, to Governor Greg Abbott at 2 (May 25, 2021) (JA ____, ____). EPA acknowledged the administrator's 2018 "Attainment/Unclassifiable" designation of El Paso County but indicated for the first time its intent to "designate" El Paso County as a nonattainment area and to combine it with the previously established nonattainment area in Doña Ana County. *Id.* at 1-2. EPA published a proposed rule

to that effect on June 14, 2021. AR-0459, Intended Air Quality Designations for the 2015 Ozone National Ambient Air Quality Standards; Response to the July 10, 2020, Court Decision Addressing El Paso, Texas and Weld County, Colorado, 86 Fed. Reg. 31,460 (June 14, 2021) (JA ____).

On behalf of the State of Texas, TCEQ's chairman submitted a comment letter detailing why the administrator should not "modify" the initial designation of El Paso County. AR-0585, Letter from Jon Niermann, Chairman, to David W. Gray, Acting Regional Administrator at 1 (July 26, 2021) (JA ____). The chairman explained, among other things, that EPA should not tie El Paso County's attainment status to the preexisting Doña Ana County nonattainment area because doing so would constitute impermissible retroactive rulemaking. *Id.* at 7-8 (JA ____).

On November 30, 2021, EPA promulgated the final rule at issue here, which "revised" the "designation[]" of El Paso County to "[f]ull county nonattainment." Final Rule, 86 Fed. Reg. at 67,866 (JA ____). The rule combined El Paso and Doña Ana Counties into a single nonattainment area. *Id.* at 67,869-70.

In response to the State's retroactivity objection, EPA insisted that it was "not redesignating El Paso County" but instead was "modifying its original designation to include a larger nonattainment area to comply with [section 7407(d)(1)(A)(i)'s] requirement that areas that 'contribute[] to ambient air quality' in violating areas shall be designated nonattainment." AR-0590, Responses to Significant Comments Received on EPA's Revised Response to State and Tribal Recommendations for the 2015 Ozone National Ambient Air Quality Standards (NAAQS) Addressing El Paso County, Texas and Weld County, Colorado, at 29 (Nov. 2021) (JA ____); *see* Final

Rule, 86 Fed. Reg. at 67,869 (JA ____) (claiming that the Final Rule "expand[ed] the boundaries of existing nonattainment areas but d[id] not create any new nonattainment areas"). According to EPA, treating its action "as a modification of [its] original designation, rather than a redesignation . . . aligns with [this Court's] direction to the Agency: 'We therefore require EPA to issue revised designations as expeditiously as practicable.'" AR-0590 at 29 (quoting *Clean Wis.*, 964 F.3d at 1176).

Accordingly, EPA determined that "the attainment date will remain August 3, 2021 for the entire nonattainment area [including El Paso County], based on the original effective date of the designation of Doña Ana County, NM on August 3, 2018." *Id.*; *accord* Final Rule, 86 Fed. Reg. at 67,869 (JA ____). EPA recognized that "Texas is in a unique position among the states affected by the [*Clean Wisconsin*] remand," noting that "no portion of Texas was already designated nonattainment as a part of the Doña Ana, NM area; as such, Texas had no notice that it should prepare Marginal area SIP submissions for that area." Final Rule, 86 Fed. Reg. at 67,869 (JA ____). And "[g]iven the lack of prior notice," EPA gave Texas "a deadline of December 30, 2022"—twelve months from the effective date of the Final Rule—"to submit a SIP submission that meets all the Marginal nonattainment area planning requirements for the newly expanded El Paso-Las Cruces TX-NM nonattainment area." *Id.* at 67,869-70 (JA ____-____); *see id.* at 67,865. But because the attainment date remained August 3, 2021, no SIP submission that Texas made after the Final Rule was published several months later could have any effect on EPA's determination of whether El Paso County reached attainment status by that date in the past (a

conclusion that, as already noted, could have significant consequences for Texas, *see supra* p. 7).

The State and TCEQ timely petitioned this Court for review. Their petition was consolidated with Weld County's, which challenges different aspects of the same Final Rule.

## Summary of the Argument

**I.**    The retroactive component of the Final Rule exceeds EPA's statutory authority. It is also arbitrary and capricious.

**A.**    Neither the APA nor the Clean Air Act authorizes retroactive rulemaking. The APA authorizes agencies to issue rules that have only "future effect." The Final Rule has *past* effect because it requires an evaluation of Texas's earlier conduct (Texas's air-quality planning and implementation for the period between 2018 and 2021) under conditions that Texas was never informed it needed to meet during that timeframe. And the Clean Air Act likewise bestows no retroactive-rulemaking authority. Although Congress gave EPA leeway to modify other statutory deadlines to *protect* States from unreasonable federal requirements, it did not give EPA authority to *undermine* a State's ability to plan for attainment status.

**B.**    The rule is also arbitrary and capricious. EPA's rationale for "modifying" the administrator's own El Paso County "Attainment/Unclassifiable" designation to retroactively make El Paso County part of the preexisting Doña Ana County nonattainment area does not withstand scrutiny. The administrator could have redesignated El Paso County as a new nonattainment area separate from Doña Ana County

and required Texas to meet the Clean Air Act's attainment standards as to that area within three years of the redesignation, as the Act expressly contemplates.

**II.**   The Final Rule also exceeded EPA's statutory authority and is arbitrary and capricious because it disguised a redesignation as a "modification." The Clean Air Act's processes for redesignations are unambiguous: nonattainment requirements kick in only *after* an area is redesignated as nonattainment. The administrator previously modified Governor Abbott's designation of El Paso County and had no authority to modify his own modification of that designation. Additionally, the timeframe to modify the El Paso County designation had long since lapsed when EPA issued the Final Rule. The administrator cannot rely on his limited authority to modify nonattainment areas to support application of a retroactive attainment date.

## Standard of Review

The Court may "hold unlawful and set aside" or "reverse" an EPA action that is "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," 5 U.S.C. § 706(2)(C); 42 U.S.C. § 7607(d)(9)(C), or "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A); 42 U.S.C. § 7607(d)(9)(A).

## Standing

Both the State of Texas and TCEQ have standing to bring this challenge. The State has standing to defend the health and welfare of its citizens and to ensure that it receives all statutorily required process under the Clean Air Act. *See Massachusetts v. EPA*, 549 U.S. 497, 520 (2007). And TCEQ, the State's environmental agency,

14

has standing to ensure that it is not placed at an unfair disadvantage in the submission and implementation of SIPs. 42 U.S.C. § 7407(a).

A<small>RGUMENT</small>

## I. The Retroactive Component of the Final Rule Exceeds EPA's Statutory Authority and Is Arbitrary and Capricious.

Agencies generally lack authority to make retroactive rules. *See* 5 U.S.C. § 551(4). "If a new rule is 'substantively inconsistent' with a prior agency practice and attaches new legal consequences to events completed before its enactment, it operates retroactively." *Arkema Inc. v. EPA*, 618 F.3d 1, 7 (D.C. Cir. 2010) (citation omitted). "Even where a rule merely narrows 'a range of possible interpretations' to a single 'precise interpretation,' it may change the legal landscape in a way that is impermissibly retroactive." *Id.* (citation omitted).

The Supreme Court and this Court have recognized different degrees of retroactivity. A rule is primarily retroactive, and presumptively invalid, when it "impose[s] new duties with respect to transactions already completed." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 280 (1994). That type of rule is valid only if it is authorized by statute. *Nat'l Petrochemical & Refiners Ass'n v. EPA*, 630 F.3d 145, 162 (D.C. Cir. 2010). By contrast, a rule is secondarily retroactive when it "merely upsets expectations." *Id.* at 159 (cleaned up). That type of rule need survive only arbitrary-or-capricious review.

The Final Rule is primarily retroactive. It "imposes new sanctions on past conduct," *id.*, because it subjects Texas to marginal-nonattainment requirements and the consequences that flow from failure to attain by the attainment date without

15

having allowed Texas to develop a plan to meet the newly applicable requirements before the attainment date. Specifically, it requires EPA to evaluate whether Texas complied with its obligation to demonstrate attainment as of August 3, 2021, even though Texas was not designated as nonattainment until December 30, 2021. Final Rule, 86 Fed. Reg. at 67,873-74 (JA ____, ____).

Accordingly, EPA must identify a specific source of statutory authority for its retroactive rule. *Nat'l Petrochemical*, 630 F.3d at 162. There are only two potential sources: the APA and the Clean Air Act. Neither supplies the needed authority. *See infra* Part I.A. But even assuming otherwise, or if the Court views the Final Rule as only secondarily retroactive, it fails arbitrary-or-capricious review. *See infra* Part I.B.

## A. The Final Rule exceeds EPA's statutory authority.

### 1. The Final Rule is inconsistent with the APA.

Under the APA, a "rule is a statement that has legal consequences only for the future." *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 217 (1988) (Scalia, J., concurring); *see* 5 U.S.C. § 551(4). It would be "erroneous" to extend a "reasonableness" inquiry—or, in the APA's terms, an "arbitrary or capricious" analysis—"to purported rules that . . . change what was the law in the past" because, "[q]uite simply, a rule is an agency statement 'of future effect,' not 'of future effect and/or reasonable past effect.'" *Bowen*, 488 U.S. at 220 (Scalia, J., concurring); *see Celtronix Telemetry, Inc. v. FCC*, 272 F.3d 585, 588 (D.C. Cir. 2001) (treating Justice Scalia's *Bowen* concurrence as "substantially authoritative").

The Final Rule "change[s] what was the law in the past." *Bowen*, 488 U.S. at 220 (Scalia, J., concurring). From August 3, 2018, when the initial designations for

the 2015 NAAQS took effect, until December 30, 2021, when the Final Rule took effect, El Paso County was designated as "Attainment/Unclassifiable." During that period, no state agency, state official, or private industry group in Texas was on notice that Texas would be subject to marginal-area nonattainment requirements, as even EPA conceded when it extended the State's deadline to submit a marginal-area nonattainment SIP. Final Rule, 86 Fed. Reg. at 67,869-70 (JA ____-____). That extended SIP-submission deadline, of course, did not change the critical date: when El Paso County would be evaluated for attainment of the 2015 NAAQS. That is so because the new SIP deadline does not, and could not, allow Texas to plan for attainment as of August 3, 2021. The Final Rule therefore upended the State's settled expectations and purported to "attach[] new legal consequences to events completed before its enactment." *Landgraf*, 511 U.S. at 270. The APA does not authorize that type of agency action. 5 U.S.C. § 551(4).

### 2.   The Final Rule is inconsistent with the CAA.

In both the Final Rule and in its response to comments on the proposed rule, EPA failed to identify any source of authority in the CAA for setting a retroactive attainment date. Instead, EPA relied on what it thought was reasonable. It cited *WildEarth Guardians v. EPA*, 830 F.3d 529 (D.C. Cir. 2016), to support its decision to extend Texas's SIP-submittal deadline. AR-0590 at 31 (JA ____). But *WildEarth Guardians* proves Texas's point. There, EPA made adjustments to compliance deadlines for a different NAAQS to avoid treating States as having missed deadlines of which they were never aware. 830 F.3d at 531, 539. The Court endorsed that approach, which allowed EPA to "avoid[] a situation in which the agency's action

would impose retroactive consequences on states." *Id.* at 540. This situation presents exactly the opposite circumstance.

For that reason, *Sierra Club v. Whitman*, 285 F.3d 63 (D.C. Cir. 2002), which EPA did not mention, is instructive. In that case, the Sierra Club urged a district court to require a reclassified area to meet the new classification's statutory deadline for SIP submittals even though that deadline passed before the reclassification. *Id.* at 68. This Court affirmed the district court's refusal to do so, noting that the relevant CAA provisions "contain no language suggesting that Congress intended to give EPA the unusual ability to implement rules retroactively." *Id.*; *see also Treasure State Res. Indus. Ass'n v. EPA*, 805 F.3d 300, 305 (D.C. Cir. 2015) (noting that, in *Whitman*, the Court found that "the sections of the Act relating to nonattainment" do not grant EPA authority to promulgate retroactive rules).

As already noted, although EPA extended Texas's SIP-submission deadline here, its imposition of a retroactive attainment date meant that no measures Texas implemented through a SIP revision could affect EPA's determination of whether El Paso County reached attainment status by that past date. *See supra* p. 12. That approach defies both common sense and the text of the Act. Under section 7511(b)(1), if EPA redesignates an area as nonattainment, that area "shall, at the time of the redesignation, be classified by operation of law" in accordance with the deadlines set out in section 7511(a). And no one disputes that section 7511(a) sets the attainment date for marginal ozone nonattainment areas at three years *from* the effective date of a nonattainment designation. The Act thus ensures that nonattainment-area requirements apply—and the three-year clock starts ticking—only *after* an area is

designated as nonattainment. That is how other provisions of the Act operate as well. *E.g.*, 42 U.S.C. § 7410(a) (requiring the submission of SIPs "within 3 years (or such shorter period as the Administrator may prescribe) *after* the promulgation of a [NAAQS]" (emphasis added)); *id.* § 7502(b) (requiring the submission of nonattainment plans "no later than 3 years *from* the date of the nonattainment designation" (emphasis added)); *cf. id.* § 7511a(i) (authorizing the administration to "adjust any applicable deadlines (other than attainment dates)" when an existing ozone nonattainment area is reclassified).

## B.  The Final Rule is arbitrary and capricious.

In any event, the retroactive component of the Final Rule does not survive arbitrary-or-capricious review. EPA's rationale for the rule was flawed, and the agency overlooked a reasonable alternative approach.

### 1.  EPA's justifications for its chosen approach are insufficient.

EPA appears to have believed that when an area in one State contributes to an adjacent nonattainment area in a neighboring State, a single nonattainment area must span the state line. *See* AR-0590 at 30 (JA ____). But the CAA imposes no such requirement.

Under section 7407(d)(1)(A), a governor may designate an area within the State's borders as nonattainment based on a conclusion that the area "contributes to ambient air quality in a nearby area that does not meet" the NAAQS. 42 U.S.C. § 7407(d)(1)(A)(i). A governor has no authority to create a multi-state nonattainment area; he or she may designate only areas within his or her State. *Id.* And the

administrator has a duty to promulgate the governors' designations as-is (and the power to modify those designations if necessary). *Id.* § 7407(d)(1)(B)(ii)-(iii).

Section 7407(d)(1)(B) does not expressly grant the administrator power to make a designation, such as a multi-state designation, that a governor could not. But section 7511a(j) reflects that multi-state nonattainment areas may exist. It therefore makes sense, and comports with historical practice, to assume that the administrator's modification power under section 7407(d)(1)(B) includes the power to create multi-state nonattainment areas. But just because the administrator has that power does not mean he must exercise it in every instance he could, especially when doing so would yield inequitable results.

Unsurprisingly, EPA identified no support for a contrary conclusion. It tried to justify the Final Rule based on concerns that setting different attainment dates for El Paso County and Doña Ana County might "result in an inequitable scheme of substantive requirements." AR-0590 at 30 (JA ____). EPA worried that if "Doña Ana County and El Paso County had different attainment dates, it could result in the two counties ending up with different classifications, even if the same air quality monitor was the determining monitor at both attainment dates." *Id.*

There are three problems with that speculation.

*First*, it requires Texas to bear the brunt of the administrator's designation of El Paso County as "Attainment/Unclassifiable" in 2018. For years, EPA disclaimed any error in that designation. *Clean Wis.*, 964 F.3d at 1174. And EPA cited no authority from this or any other court suggesting that a State may be penalized for an *agency's* reversal of its prior decision. In fact, the Court has explained that "[a]n

20

agency commits reversible error when it penalizes an applicant based on standards of which the agency failed to provide notice." *CHM Broad. Ltd. P'ship v. FCC*, 24 F.3d 1453, 1457 (D.C. Cir. 1994).

*Second*, New Mexico apparently did not share EPA's professed equitable concern for it. No official in that State asked EPA to align El Paso County's attainment date with Doña Ana County's, despite ample opportunity to provide public comments before EPA's promulgation of the Final Rule.

*Third*, and relatedly, EPA departed from its own historical practices. EPA has never combined El Paso and Doña Ana Counties into a single nonattainment area, even when both counties failed to attain the same standard. *See* AR-0479, Comment Letter from the Texas Association of Manufacturers and the Texas Oil & Gas Association (July 14, 2021) at 2 (JA ____). Indeed, EPA formerly (and correctly) recognized that these areas are separate airsheds. *Id.* (JA ____) (citing the 1997 1-hour ozone NAAQS and the 1987 NAAQS for particulate matter). When Doña Ana County was designated as nonattainment for the ozone NAAQS in 1995, 60 Fed. Reg. 30,789, 30,789 (June 12, 1995), El Paso County was *already* a nonattainment area for that NAAQS, 56 Fed. Reg. 56,694, 56,831 (Nov. 6, 1991). But the two counties have "never been combined into a single nonattainment area even though EPA has previously designated both as nonattainment for two separate NAAQS." AR-0479, Attach. at 6 (JA ____); *see also* AR-0585 at 7 (JA ____) (TCEQ comment letter explaining that the two areas were separately designated as nonattainment for the 1979 1-hour ozone NAAQS). Nothing in the Act required a different approach as to the 2015 ozone NAAQS, and it makes little sense to think that saddling Texas with

21

an already-expired attainment date would somehow improve air-quality issues in either Texas or New Mexico. *See Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 222 (2016) (noting that an "unexplained inconsistency in agency policy is a reason for holding an interpretation to be an arbitrary and capricious change from agency practice" (cleaned up)).

By contrast, Texas and other commenters advanced serious, non-speculative problems with EPA's proposed (and now finalized) rule. If the August 3, 2021 attainment deadline holds, Texas will never have had an opportunity to plan for El Paso County to reach attainment status before its marginal-area attainment date. *See* AR-0585 at 7-8 (JA ____-____) (TCEQ comment letter stating that "[i]f the El Paso County area is designated as nonattainment, it should not be tied retroactively to implementation deadlines that existed prior to the area being designated as nonattainment"). Instead, EPA will assess whether the nonattainment area that now includes El Paso County was in attainment as of a date in the past. *See* 42 U.S.C. § 7511(b)(2)(A).

If it was not, that area will be classified at a "moderate" or higher nonattainment level. *Id.* § 7511(b)(2)(A)(i)-(ii); *see supra* p. 7. In other words, El Paso County could tumble from *attainment* status to at least *moderate nonattainment* status. As one commenter warned, that would "stifle economic growth from new and existing sources and put unnecessary financial strain on existing sources" due to the more stringent requirements. AR-0479, Attach. at 8 (JA ____); *see supra* p. 7 (citing section 7511a(b)'s requirements for moderate nonattainment plans and EPA's recognition of the increased stringency of those requirements).

### 2. EPA could have regulated reasonably.

This result was avoidable, as EPA could have pursued an alternative approach: redesignate El Paso County as a new nonattainment area separate from Doña Ana County, with a corresponding three-year window from the date of the redesignation to achieve attainment status. *See* 42 U.S.C. §§ 7407(d)(3), 7511(a)(1). That approach would have been consistent with this Court's instructions on remand. *See Clean Wis.*, 964 F.3d at 1176. As already noted, no party challenged the Doña Ana County marginal nonattainment designation or requested any change to that designation. Accordingly, this Court did not remand the Doña Ana County designation. *See id.* at 1177. It would have been sensible for EPA to focus on El Paso County as a distinct area rather than to join it with a preexisting nonattainment area that was not previously subject to this Court's review.

## II. EPA Exceeded Its Statutory Authority and Acted Arbitrarily and Capriciously in Disguising a Redesignation as a Modification.

The Final Rule is fatally flawed for one reason more. It conflates two distinct concepts under the Clean Air Act: the administrator's *modification* of a governor's designation under section 7407(d)(1)(B)(ii) and the administrator's *redesignation* of an existing designation under section 7407(d)(3)(C). *See* Final Rule, 86 Fed. Reg. at 67,874-75 (JA ____-____). EPA's action with respect to El Paso County could not be a proper modification.

By statute, the administrator may modify a *governor's* designations. 42 U.S.C. § 7407(d)(1)(B)(ii). His 2018 "Attainment/Unclassifiable" designation of El Paso County was a modification of Governor Abbott's "attainment" designation. *See* AR-

0214 at 1 (JA ____). No statutory text authorizes the administrator to modify *his own* designation, which is what EPA said was happening here. AR-0590 at 29 (stating that "EPA is modifying its original designation"); *compare also* 42 U.S.C. § 7407(d)(1)(B)(i), (ii) (reflecting that the administrator's modification of a governor's designation must be made within a two-year (or, if extended, three-year) window after promulgation of the relevant NAAQS, which here occurred in 2015, 80 Fed. Reg. at 65,292), *with* Final Rule, 86 Fed. Reg. at 67,865 (JA ____) (reflecting that the Final Rule was effective December 30, 2021—more than six years after the promulgation of the NAAQS). EPA sought refuge in this Court's *Clean Wisconsin* remand instructions, AR-0590 at 29, but those instructions cannot reasonably be construed as requiring something the Act does not authorize.

The Act *does* authorize a distinct mechanism to alter an area's attainment status after the initial designation has been promulgated: the administrator may "redesignate" any area with 120 days' notice to the State's governor. 42 U.S.C. § 7407(d)(3)(A)-(C). But if the administrator redesignates an area as nonattainment, that area "shall, at the time of the redesignation, be classified by operation of law" in accordance with the deadlines set out in 42 U.S.C. § 7511(a). *See id.* § 7511(b)(1). And section 7511(a) establishes the attainment date for marginal ozone nonattainment areas at three years from the effective date of a nonattainment designation, not some earlier date.

The administrator's "Attainment/Unclassifiable" designation for El Paso County was remanded to the EPA, not vacated. *Clean Wis.*, 964 F.3d at 1177. A remand without vacatur leaves the challenged rule in effect until EPA acts on remand.

*See North Carolina v. EPA*, 550 F.3d 1176, 1178 (D.C. Cir. 2008). Thus, until December 30, 2021, El Paso County was designated as attainment. This Court did not make any findings that the administrator's initial designation was erroneous. EPA independently reached that conclusion on remand, reversing the administrator's previous decision. That action was a redesignation and, for that reason, entitled Texas to the three years that the Final Rule unlawfully denied it. *Compare* 42 U.S.C. § 7511(a), *with* Final Rule, 86 Fed. Reg. at 67,874 (JA ____). For that additional reason, EPA acted in excess of its statutory authority and in an arbitrary and capricious manner when, to achieve a retroactive result, it attempted to define its action as a "modification" of the administrator's own former designation of El Paso County.

## Conclusion

The State's petition for review should be granted, and the Final Rule should be reversed, set aside, or vacated.

Respectfully submitted.

Ken Paxton
Attorney General of Texas

Brent Webster
First Assistant Attorney General

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1700
Fax: (512) 474-2697

Judd E. Stone II
Solicitor General

Bill Davis
Deputy Solicitor General

/s/ Michael R. Abrams
Michael R. Abrams
Assistant Solicitor General
Michael.Abrams@oag.texas.gov

Counsel for the State of Texas and the
Texas Commission on Environmental
Quality

26

## Certificate of Compliance

This brief complies with: (1) the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) and this Court's order dated May 25, 2022 (Doc. No. 1948036), because it contains 6,390 words, excluding the parts of the brief exempted by Rule 32(f), and the combined words of Texas's opening brief and Weld County's opening brief do not exceed 15,000 words; and (2) the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Equity) using Microsoft Word (the same program used to calculate the word count).

/s/ Michael R. Abrams
Michael R. Abrams

## Certificate of Service

On July 1, 2022, this brief was served via CM/ECF on all registered counsel.

/s/ Michael R. Abrams
Michael R. Abrams

27